IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

RANDY WILCHER,

       Defendant.

CRIMINAL CASE NO.
1:10-CR-25-TWT-LTW

## MAGISTRATE JUDGE'S ORDER, FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING CASE READY FOR TRIAL

Pending before this Court is Defendant Randy Wilcher's Motion to Suppress Evidence. Docket Entry [26]. Defendant's Motion to Supplement the Record is also before the Court. Docket Entry [41]. In Defendant's Motion to Supplement the Record, he seeks to supplement the record with documents from his parole file concerning his drug screenings which are necessary for consideration of his Motion to Suppress. For good cause shown, Defendant's Motion to Supplement the Record is **GRANTED**. Docket Entry [41].

Having considered Defendant's motions and all supporting documents submitted,

and for the reasons set forth below, this Court **RECOMMENDS** that Defendant's Motion to Suppress be **DENIED**.  Docket Entry [26].

## BACKGROUND

On January 19, 2010, the Grand Jury entered a three count indictment against Defendant Randy Wilcher (hereinafter "Defendant"), including one count of knowingly and intentionally possessing with intent to distribute a Schedule I controlled substance (containing a detectable amount of heroin) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(c); knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and possessing a firearm despite being a convicted felon in violation of 18 U.S.C. § 922(g)(1), 924(e).  Docket Entry [7].  The indictment also contains a forfeiture provision seeking forfeiture of all firearms and ammunition involved in the commission of the offense.  Docket Entry [7].

### A.    **Defendant is Paroled**

Defendant was previously convicted for state offenses for violations of the Georgia Controlled Substance Act, possession of cocaine, possession of a firearm during the commission of a crime, possession of a firearm by a convicted felon, voluntary manslaughter, and aggravated assault. (Transcript of May 26, 2010 hearing, hereinafter "Tr.," 11, 24, 34; Gov't Ex. 1). Defendant was subsequently paroled in 2005, meaning

he was serving the remainder of his sentence outside the confines of a penitentiary. (Tr. 5, 6, 9-10; Gov't Ex. 2). Prior to being paroled, Defendant was required to agree to abide by a number of standard conditions while on parole. (Tr. 11, 37-38). These conditions included his agreement that he would report to his parole officer within twenty-four hours of his release, participate in a rehabilitation plan designed by his Parole Officer, submit to drug tests, notify his Parole Officer if he was arrested for any offense, refrain from possessing a firearm or ammunition, and submit to warrantless searches of his person, papers, and place of residence. (Gov't Ex. 2; Tr. 10-11, 37). On March 21, 2006, Defendant signed a document entitled "Standard Conditions Under Which This Parole is Granted" which indicated his agreement to abide by the conditions. (Tr. 11; Gov't Ex. 2, 3). Defendant signed the document again in May 2009. (Tr. 11; Gov't Ex. 2, 3). Defendant would have completed his sentence on December 12, 2009. (Tr. 60).

In approximately May 2009, the South Metro Parole Center became responsible for supervising Defendant. (Tr. 9-15, 35). When Defendant reported to the South Metro Parole Center for supervision, Andrew Rieken was assigned as his parole officer. (Tr. 9, 15, 35). After Defendant reported to Parole Officer Rieken, he and Parole Officer Rieken discussed a document entitled Standard Conditions Under Which This Parole is

3

Granted and Defendant signed a second copy of the conditions. (Tr. 14; Gov't Ex. 3). Defendant was required to report to Parole Officer Rieken once a month, and from time to time, he was required to submit to drug screenings. (Tr. 15-16). During Defendant's September 2, 2009 visit to Parole Officer Rieken, Defendant tested positive for marijuana usage.[1] (Tr. 16-18; Gov't Ex. 5).

On September 9, 2009 or September 22, 2009, Defendant was arrested for possession of marijuana and incarcerated until October 15, 2009. (Tr. 19, 40). Despite the arrest, Defendant remained on parole under the same conditions. (Tr. 19). Drug screenings on October 15, 2009, October 20, 2009, and November 3, 2009, indicate that Defendant was negative for marijuana usage. (Docket Entry [41-1], pp. 3-5).

## B.   Search of Defendant's Residence

Parole Officer Rieken, with the approval of the Chief Parole Officer, planned a search of Defendant's residence for November 24, 2009. (Tr. 23-24). Parole Officer Rieken believed that the search was justified by reasonable suspicion because Defendant was arrested in October 2008, for possession of heroin and cocaine with intent to

---

[1] Although Parole Officer Rieken initially testified that the positive marijuana screening occurred on October 2, 2009, the Monthly Supervision Report signed by Defendant indicates that his visit to the Parole Office occurred on September 2, 2009. Compare Tr. 16 with Gov't Ex. 5; Tr. 18. Additionally, the Drug Screen results indicate that the positive drug screening occurred on September 2, 2009.

distribute, subsequently had a positive drug screen in September 2009, and was arrested for possession of marijuana later in the same month. (Tr. 22). Prior to conducting the search of Defendant's residence, Parole Officer Rieken contacted Special Agent Eric DeGree ("SA DeGree") of the Federal Bureau of Alcohol, Tobacco, and Firearms (hereinafter "ATF").[2] (Tr. 24, 47-48, 54). Parole Officer Rieken requested SA DeGree's assistance with the search because Defendant's criminal history included possession of a firearm and Parole Officer Rieken surmised that Defendant could be in possession of a firearm at the time the search was to be conducted. (Tr. 24). At the time of the search, ATF SA DeGree and three other Parole Officers accompanied Parole Officer Rieken. (Tr. 24).

The officers arrived at Defendant's residence and conducted a search of his bedroom and the common areas of his residence between 7:30 and 7:45 a.m. (Tr. 25, 28, 30). The officers located a small bag of marijuana on the floor of Defendant's bedroom closet and a nine-millimeter pistol underneath Defendant's bed. (Tr. 31-32). Within shoe boxes in an office closet, the officers found bullets, a bag of heroin, and bongs for

---

[2] Parole Officer Rieken testified that he does not recall when he contacted SA DeGree. (Tr. 51-52, 68, 73). SA DeGree testified that Parole Officer Rieken could have contacted him several days or a week in advance of the search and that he obtained a criminal background check of Defendant four days prior to the search. (Tr. 51-52, 68, 73).

smoking marijuana.  (Tr. 32).

### C.   State Board of Pardon's and Paroles Search Procedures

The State of Georgia Board of Pardons and Paroles has established a policy setting forth the circumstances under which Parole Officers are authorized to conduct a warrantless search of a Parolee's residence. (Tr. 20; Gov't Ex. 7).  The policy provides that the search of a parolee's residence may be conducted after receiving approval of the Chief Parole Officer and after establishing reasonable suspicion.  (Tr. 21-22; Gov't Ex. 7).  The policy notes that reasonable suspicion may be established by, for example, a parolee's positive urine screen, erratic behavior, lost job, information from a family member indicating drug use, as well as potential criminal behavior or parole violations. (Tr. 21-22; Gov't Ex. 7).  The policy also provides that warrantless searches are to be conducted "under the supervision and control of patrol officers" and that "[a]ny search which involves the participation of other law enforcement agency personnel, should be conducted under the direct supervision of board personnel."    (Gov't Ex. 7).

## LEGAL ANALYSIS

Defendant argues that evidenced seized during the search of his residence should be suppressed because (1)given that the search was conducted by a parole officer in concert with a federal law enforcement agent in pursuit of a law enforcement goal,

6

probable cause for the search is required and the law enforcement officers did not have probable cause; and (2) law enforcement officers did not have reasonable suspicion that Defendant was engaging in criminal activity or that evidence of criminal activity would be found at Defendant's residence.  Defendant further argues that evidence relied upon by Parole Officer Rieken to form the basis of his reasonable suspicion was stale.

### A.    The Search of Defendant's Residence was Lawful

Under the Supreme Court's general Fourth Amendment approach, courts examine the totality of the circumstances to determine whether a search is reasonable within the meaning of the Fourth Amendment.  <u>Samson v. California</u>, 547 U.S. 843, 848 (2006). "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."  <u>United States v. Knights</u>, 534 U.S. 112, 118-19 (2001); <u>United States v. Yuknavich</u>, 419 F.3d 1302, 1309 (11th Cir. 2005).

Defendant's status as a parolee affects both sides of the balance.  <u>Knights</u>, 534 U.S. at 119.  Defendant's status as a parolee militates in favor of the notion that he has a severely diminished expectation of privacy.  <u>Samson</u>, 547 U.S. at 851.  Parolees, who enjoy less liberty than average citizens, have fewer expectations of privacy than

7

probationers, because parole is more akin to imprisonment than probation.  <u>Samson</u>,

547 U.S. at 850.  Additionally, the Supreme Court has pointed out that "the essence of

parole is release from prison, before completion of sentence, on the condition that the

prisoner abide by certain rules during the balance of the sentence."  <u>Id.</u> at 850.

Consistent with the United States Supreme Court's discussion of parolees,

Defendant's status as a Georgia parolee severely restricted his liberty.  Pursuant to

O.C.G.A. § 42-9-44, the State Board of Pardons and Paroles may adopt general rules

concerning the conditions of parole including requirements that the parolee shall not

leave the state or any definite area within the state without the consent of the board,

shall contribute to the support of his or her dependents to the best of his ability, shall

make reparation for his crime, shall abandon evil associates and ways, and shall abide

by the instructions of his supervisor.  O.C.G.A. § 42-9-44.  Additionally, parolees who

do not have a high school diploma or general education development equivalency

diploma (GED) shall be required to obtain a diploma or GED.  O.C.G.A. § 42-9-44(b).

As for this Defendant, the State Board of Pardons and Paroles required that he be

placed on electronic monitoring immediately upon his release and undergo a substance

abuse assessment.   (Gov't Ex. 1). Defendant also agreed to participate in a

rehabilitation plan designed by his Parole Officer, to submit to drug tests, to notify his

Parole Officer if he was arrested for any offense, and not to possess a firearm or ammunition. (Gov't Ex. 2). Additionally, Defendant was required to report to his Parole Officer every month, pay restitution fees, submit to a midnight through 6:00 a.m. curfew, avoid association with persons on parole or probation, convicted felons, or persons of bad reputation, and abstain from going to bars, pool halls, high drug areas, or places with a bad reputation. (Gov't Ex. 4). Defendant also agreed as a condition of his parole to reside only at the address to which he was paroled, maintain legitimate, full time employment, not change employment or quit his job without obtaining permission from his Parole Officer, bring pay-stubs every month as proof of employment, and provide urine samples. (Gov't Ex. 4). Perhaps the most important condition Defendant agreed to was the condition that required him to greatly reduce his expectation of privacy and submit to warrantless searches of his person, papers, and place of residence. (Gov't Ex. 2).

Although Defendant's expectation of privacy was significantly reduced, the State of Georgia has a strong concern that a parolee will be more likely than an ordinary member of the community to engage in criminal conduct. Knights, 534 U.S. at 121. Therefore, the State of Georgia's focus on parolees, more so than the average citizen, is justified because of its interest in protecting potential victims of criminal enterprise.

9

Knights, 534 U.S. at 121. Additionally, the State of Georgia has a substantial interest in supervising parolees in order to reduce recidivism and promote reintegration. United States v. Stewart, 213 F. App'x 898, 899 (11th Cir. 2007). The Supreme Court has repeatedly reiterated that a State's interest in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment. Knights, 534 U.S. at 121; Griffin v. Wisconsin, 483 U.S. 868, 879 (1987). Under these circumstances, the conditions of Defendant's release so diminished his expectation of privacy, that even a suspicionless search does not violate the Fourth Amendment. Samson, 547 U.S. at 853-57; Stewart, 213 F. App'x at 899 (holding that warrantless and suspicionless search of a Georgia parolee's home did not violate the Fourth Amendment because parole certificate required him to submit to search of home at any time without a warrant).

Even if, as Defendant argues in the alternative, the Fourth Amendment required that the search be justified by reasonable suspicion, the search did not offend the Fourth Amendment. The reasonable suspicion test consists of a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable. Yuknavich, 419 F.3d at 1311; Knights, 534 U.S. at 592 (finding

10

the reasonable suspicion standard instead of the probable cause standard sufficient to justify warrantless searches of probationer's residence because the balance of governmental and private interests makes such a standard reasonable).  When making a determination of reasonable suspicion, courts must examine the totality of the circumstances of each case to see whether the searching officers have a particularized and objective basis for suspecting legal wrongdoing.  Yuknavich, 419 F.3d at 1311. "[A]n inchoate and unparticularized suspicion or hunch of criminal activity is not enough to satisfy the minimum level of objectivity required."  Yuknavich, 419 F.3d at 1311.  "The officer must 'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Id., citing United States v. Boyce, 351 F.3d 1102, 1107 (11th Cir. 2003).

Under the circumstances of this case, Parole Officer Rieken possessed reasonable suspicion that Defendant was engaging in criminal activity.  Defendant was previously convicted of state offenses for violations of the Georgia Controlled Substance Act, possession of cocaine, possession of a firearm during the commission of a crime, possession of a firearm by a convicted felon, voluntary manslaughter, and aggravated assault. (Tr. 11, 24, 34; Gov't Ex. 1).  Additionally, while Defendant was on parole, he had a positive drug screen a little more than two months prior to the search and he

11

was subsequently arrested for possession of marijuana. (Tr. 22). Furthermore, Defendant was previously arrested in October 2008 for possession of heroin and cocaine with intent to distribute in violation of his parole conditions. (Tr. 22). Given that parolees and probationers are more likely than the average citizen to break the law, and indeed, Defendant had two arrests for possession of illegal drugs as well as a recent positive drug screening since his parole, it was reasonable for Parole Officer Rieken to believe that Defendant was breaking the law. See United States v. Walley, 271 F. App'x 966, 968 (11th Cir. 2008) (concluding that probation officer had reasonable suspicion to conduct search of probationer's home because probationer, who was on probation for previously distributing marijuana, had been arrested for possession of marijuana and therefore, a sufficiently high probability that criminal conduct was occurring existed); Yuknavich, 419 F.3d at 1311 (concluding that officers had reasonable suspicion to search convicted child pornographer's computer while he was on probation because he had two prior convictions, had twice accessed the internet unsupervised, had delayed ten minutes before opening the door for law enforcement officers, and was shirtless and breathless when opening the door while phone line was running into a modem connected to his computer).

      In support of his Motion to Suppress , Defendant argues that the information

forming the basis for Officer Rieken's reasonable suspicion was stale because Defendant's positive drug screening occurred more than two months prior to the search and arrest and Defendant had clean drug screenings since that time. When considering the staleness of information, the Court must consider whether the crime is ongoing or isolated. United States v. Carter, 566 F.3d 970, 975 (11th Cir. 2009), cert. denied, 130 S. Ct. 624 (2009). In this case, although Defendant had been previously convicted of violations of the Georgia Controlled Substances Act and possession of cocaine, the criminal conduct appeared to continue. Defendant was arrested in late 2008, had a positive screening for drugs in September 2009, and was shortly thereafter arrested for possession of marijuana.[3] (Tr. 18-19). Moreover, this Court is not entirely convinced that Defendant's subsequent clean drug screenings should have obviated Parole Officer Rieken's reasonable suspicion. Parole Officer Rieken could reasonably surmise that after Defendant was recently arrested for possession of drugs and had tested positive for the presence of THC, Defendant would be prepared for the possibility of additional drug screenings, at least for a short period of time after his arrest. Viewing the totality of the circumstances, Parole Officer Rieken's suspicion was reasonable. Carter, 566

---

[3] Defendant was incarcerated for approximately half of the time between his positive drug screening and the search of his residence. (Tr. 19).

F.3d at 975.

**B.      The Participation of the Bureau of Alcohol, Tobacco and Firearms Special Agent in the Search did not Invalidate the Search**

Defendant also argues that the fruits of the search should also be suppressed because the search was a mere pretext for law enforcement investigation of new criminal activity.  In support, Defendant contends that Special Agent DeGree exploited Parole Officer Rieken's authority to conduct warrantless searches because the search was done for law enforcement purposes and Special Agent DeGree was given advance notice of the search.  Other law enforcement officers may participate in the search of a parolee's home by parole officers so long as the other law enforcement officers are acting under the direction of a parole officer and the parole officer is pursuing legitimate supervision objectives.  United States v. Warren, 566 F.3d 1211, 1217 (10th Cir. 2009), cert. denied, 130 S.Ct 569 (2009); United States v. Newton, 369 F.3d 659, 667 (2nd Cir. 2004); United States v. Brown, No. 3:08-CR-027-MEF, 2009 WL 112574, at *4 (M.D. Ala. Jan. 15, 2009) (holding that search was still constitutionally acceptable even though probation officers enlisted the help of other law enforcement officers to assist them with search because proper probationary purpose justified the search and search was initiated by probation officers and conducted at their direction).

14

"Police officers and parole officers are fungible when the former serve as mere implementers of decisions already made by the latter." Warren, 566 F.3d at 1217, citing United States v. Cardona. Indeed, this reasoning is consistent with the State Board of Pardons and Paroles' policy which anticipates the desirability of including other law enforcement in searches and specifies that "[a]ny search which involves the participation of other law enforcement agency personnel, should be conducted under the direct supervision of Board personnel." (Gov't Ex. 7).

In this case, the search was clearly initiated for supervisory purposes and was under the control of the parole officers. Defendant had been convicted of, among other things, violations of the Georgia Controlled Substances Act and possession of cocaine. (Gov't Ex. 1). As a condition of Defendant's parole, Defendant received a substance abuse assessment and was required to follow through with recommendations made by individuals performing the substance abuse assessment. (Gov't Ex. 1). Defendant was supposed to abide by all laws, refrain from possessing any illegal drugs on parole, refrain from associating with person of bad reputation or other convicted felons, and refrain from frequenting bars or high drug areas. (Gov't Ex. 4). Nevertheless, Defendant tested positive for THC and was arrested for possession of marijuana. (Tr. 22). Under these conditions, searching Defendant's home for drugs is consistent with

15

a supervisory purpose.

Additionally, the search was under the control of the parole officers. The search was planned by Parole Officer Rieken, approved by Chief Parole Officer Morrow, and conducted by Parole Officer Rieken, three other parole officers, including Chief Parole Office Morrow, and SA DeGree. (Tr. 22-24, 28). Additionally, from the outset of the search, Parole Officer Rieken took the lead, initiated contact, interacted with family members, and gathered them into the family room. (Tr. 26-29). Chief Parole Officer Morrow stayed in the living room with the occupants of the home to keep them calm and explain what was going on with the search. (Tr. 29). SA DeGree, in contrast, acted only at the direction of the parole officers. (Tr. 69). SA DeGree was contacted to assist with the search because Parole Officer Rieken was concerned that the search may reveal that Defendant was in possession of a fire arm and Parole Officer Rieken did not want to process and handle evidence. (Tr. 24). SA DeGree did not initiate the investigation of Defendant Wilcher and never knew anything about Defendant Wilcher until Parole Officer Rieken contacted him. (Tr. 68). Although present at the search, Special Agent DeGree played a lesser role. Special Agent DeGree testified that he did not discuss the locations of rooms with the homeowners and was only present in case the parole officers found any evidence. (Tr. 69). Because the search was directed by probation

16

officers for a supervisory purpose, the search was not invalidated by the presence of SA DeGree.  Accordingly, Defendant's Motion to Suppress should be **DENIED**.  Docket Entries [26, 41].

## **CONCLUSION**

For the aforementioned reasons, this Court **RECOMMENDS** that Defendant's Motion to Suppress be **DENIED** and Defendant's Motion to Supplement the Record is **GRANTED**.  Docket Entries [26, 41].  There are no further motions or problems pending before the undersigned to prevent the scheduling of this case for trial. Therefore, this action is **CERTIFIED READY FOR TRIAL**.

**SO ORDERED, REPORTED AND RECOMMENDED** this 16th day of December, 2010.

s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

RANDY WILCHER,

     Defendant.

CRIMINAL CASE NO.
1:10-CR-25-TWT-LTW

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and this Court's Local Rule 72.1C. Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), within fourteen (14) days after service of this order, each party may file written objections, if any, to the Report and Recommendation. Pursuant to Title 18, United States Code, Section 3161(h)(1)(F), **the above-referenced fourteen (14) days allowed for objections is EXCLUDED from the computation of time under the Speedy Trial Act.**

Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court. If no objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983), cert. denied, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 16th day of December, 2010.

s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE